

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
PROBATION OFFICE

# MEMORANDUM

November 29, 2007


TO:                **THE HONORABLE MYRON H. THOMPSON**
                      **U.S. DISTRICT JUDGE**

FROM:           **DAPHNE P. WILLCOX**
                      **U. S. PROBATION OFFICER**

RE:                  **BETTY ROBERTSON**
                      **DKT.#: 2:06cr167-MHT**

---

In response to the Court's order dated November 20, 2007, the probation officer conducted an investigation of the defendant's son's adaptation to his new living arrangements. Prior to her placement at Bannum Place, Betty Robertson made arrangements for her son, Steven Smoke, to live with his paternal grandmother, Bessie Smoke. After Robertson's placement at Bannum, Betty Robertson reported she was not able to see her son or talk to him on the telephone. She said that shortly after her arrival at Bannun Place, Bessie Smoke's telephone was disconnected due to an unpaid bill and her son played football on Saturdays which made it difficult for him to visit her. Betty Robertson later reported to the probation officer that her son had moved in with her sister, Mattie Robertson. She said she was also happier about the situation because Mattie Robertson could be contacted by telephone and she would bring Steven Smoke to Bannum Place on visitation day. Betty Robertson maintained that her son would rather be at home with her.

On November 26, 2007, the probation officer attempted to meet with Bessie Smoke to determine why Steven Smoke left her residence. She was not home; however, her son, Cory Smoke, was at the residence. He said that when the child first moved in with Bessie Smoke, he (Cory Smoke) was in the area more often and spent a lot of time with Steven. He encouraged him to play football and he would let him "hang out" at his apartment in order to give him something different to do. Cory Smoke's employment caused him to spend more time in the Montgomery area and he was eventually unable to spend time with his nephew. Cory Smoke advised that when Steven first arrived at Bessie's Smoke's residence, he missed his mother very much and cried almost every day for the first two weeks, especially after talking to her on the telephone. He then appeared to adjust to the situation. Cory Smoke said that his mother was employed and when she could no longer help with Steven, Bessie Smoke found it difficult to care for the child. It was at some point thereafter that Steven Smoke moved in with his aunt, Mattie Robertson.

The probation officer also traveled to Mattie Robertson's residence on November 26, 2007. She was not home; however, contact was made with her brother, Belton Robertson, who lives across the street. He advised that he was not aware of any current problems with Steven Smoke and that the child seemed to be doing well. He said he thought Steven moved from his paternal grandmother's house because there was not much to do where she lived and the child had no one to play with. Belton Robertson admitted that his nephew misses his mother as Betty Robertson

Betty Robertson
Page 2

and her son are extremely close to one another.

Mattie Robertson called the probation officer later on November 26, 2007.  She was also asked about her nephew's adjustment to his mother's placement at Bannum Place.  She said that Steven Smoke was initially upset about the situation; however, he seemed to adjust fairly well considering the situation.  She advised that Steven's last grade report consisted of all A's and B's and that he is very disciplined when it comes to doing his homework.  Mattie Robertson reported that Steven would rather be at home with his mother but being at her residence is working out.  She said that her 18 year old daughter lives next door and her brother lives across the street and both help with Steven when she is at work (Mattie Robertson works for Webster Industries in Montgomery).  Mattie Robertson further revealed that her nephew and Betty Robertson are very close and described their relationship to be more like that of a brother and sister rather than of a mother and son.  She said she takes him to see his mother on Saturdays and he is able to talk to her on the telephone during the week.

The probation officer also addressed the second allegation in the motion filed on behalf of Betty Robertson, alleging that she may be in danger at the halfway house due to other individuals having knowledge of her cooperation in the instant case.  On November 21, 2007, the probation officer contacted Bannum Place Director, Clifford Coleman, to discuss Betty Robertson's safety at the facility.  He reported that the only way other residents might know about Robertson's cooperation in the instant case was if she told them.  He said she has befriended many of the residents and he has no knowledge of her being in danger at Bannum Place.

After taking into consideration the conversations with Mattie Robertson, Belton Robertson, and Cory Smoke, the probation officer is of the opinion that Steven Smoke may not like having his mother living elsewhere, but he is being properly cared for.  If he were experiencing major adjustment problems, it is doubtful that he would be able to make good grades in school and enjoy playing football.  The situation is certainly unfortunate; however, when parents of children are incarcerated some adjustment problems are anticipated.  Betty Robertson received a significant departure at sentencing and is fortunate in the sense that she is close to home and can frequently talk to her son as well as see him on a weekly basis.  There are many mothers who are incarcerated that do not have the opportunity to enjoy that luxury.  The probation officer finds it difficult to make this recommendation; however, to be fair to other incarcerated mothers, and as a consequence for her involvement in criminal activity, Betty Robertson should be required to serve the remaining portion of her nine month placement at Bannum Place.  Additionally, unless there is significant evidence to suggest otherwise, the probation officer does not believe Betty Robertson is in physical danger as a result of her placement.  If such evidence is presented, it may be in her best interest to be moved to another community corrections facility.

Respectfully submitted,

/s/ Daphne P. Willcox
United States Probation Officer

Reviewed and approved:

/s/ David Ron Thweatt
Supervisory U. S. Probation Officer

DPW